United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY Commission, | No. C 07-80065 WHA |
| Applicant, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART APPLICATION FOR AN ORDER ENFORCING ADMINISTRATIVE SUBPOENA** |
| MCCORMICK & SCHMICK'S, | |
| Respondent. | |

## INTRODUCTION

In this application seeking the enforcement of an administrative subpoena, respondent objects to enforcement of the subpoena on several grounds. Here, applicant is entitled to information regarding both public and non-public positions in respondent's restaurants. Both kinds of positions are relevant to applicant's current investigation. As to the other items in the subpoena, respondent has shown that compliance with the subpoena in the manner that the EEOC requests would pose an undue burden on respondent. Parties have reached a tentative agreement for producing the relevant files, disagreeing only on the number of restaurants for which respondent must produce personnel files. As the Commission proposes, respondent will be ordered to produce files from thirty restaurant locations selected by the Commission. Accordingly, the EEOC's application for an order enforcing the administrative subpoena is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

Respondent McCormick & Schmick's Seafood Restaurants, Inc. operates 67 seafood restaurants located in 27 states and the District of Columbia. Its restaurants are operated under various names, including McCormick & Schmick's Seafood Restaurant, M&S Grill, Spenger's, McCormick & Kuleto's, Jake's Grill and others. It has been a publicly-traded company since July 2004.

Respondent presents the declarations of its employees and its corporate filings to emphasize that its individual restaurants operate with a great deal of autonomy. Each restaurant is independently responsible for profits and losses, and managers and chefs have a high degree of responsibility and independence over personnel matters (Brown Decl. Exh. 1 at 10). Managers and chefs at each location are responsible for hiring, training and disciplining employees (Gaydeski Decl. ¶¶ 4–6; Brown Decl. ¶¶ 5–7). The EEOC points out, however, that each restaurant is required to operate within guidelines set by McCormick & Schmick's corporate headquarters. Each restaurant uses the same employee and management handbooks (Mitchell Decl. Exh. 1).

In 2005, seven current and former employees and applicants filed charges of discrimination against respondent with the EEOC. All of these charges relate to three of respondent's California locations. These were:

- Dante Byrd, an African-American male who alleged that respondent refused to hire him on the basis of race and/or color as a bartender. Byrd later received a right-to-sue letter from the EEOC and filed a nation-wide class action in federal district court (Baldonado Decl. Exh. 1; *Dante Byrd and Juanita Wynn, et al., v. McCormick & Schmick's Seafood Rest. Inc., et al.*, Case No. 06-3153 (Wilken, J));

- Sidney Holloway, an African-American male, alleged that he experienced a hostile work environment and was subjected to disparate terms and conditions of employment in shifts and hours assignments and was terminated due to his race (*id*. at Exh. 2);

- Tenisha Hathaway, an African-American female, alleged that she was subjected to a racially hostile work environment and disparate terms of employment leading to constructive discharge based on her race and/or color (*id*. at Exh. 3);

- Juanita Wynne, an African-American female, alleged that she was subjected to disparate treatment in assignments and compensation, and was harassed based on her race and/or color. Wynne received a right-to-sue notice and is currently a

2

    co-plaintiff with Dante Byrd in an employment-discrimination class action pending in this Court (*id*. at Exh. 4);

- Charles Allen, an African-American male, alleged that he was given less desirable shifts as a waitperson and was denied a position as a bartender based on his race and/or color (*id*. at Exh. 5);

- Marco Ponce, a Latino male, alleged that he was denied a promotion from busperson to server, denied breaks and shifts and was subjected to disparate terms and conditions of employment based on his race, color, and/or national origin. He also alleged that he faced retaliation for complaining about discrimination (*id*. at Exh. 6);

- Helton de Carvalho, a African/Hispanic male, alleged that he was terminated from his position as an assistant manager because of his refusal to carry out management's plans to systematically restrict the employment of minorities to non-public positions (*id*. at Exh. 7).

        The EEOC consolidated the seven individual charges on June 14, 2006, and issued a request for information about respondent's hiring practices (Baldonado Decl. Exh. 13). In response, respondent produced documents and data related to the three restaurants located in California where the underlying charges arose. This included documents related to its hiring and employment practices at its Berkeley, San Francisco, and El Segundo restaurants, including a spreadsheet listing employees, handbooks for employees and managers and EEO-1 data for the locations. McCormick & Schmick's declined to produce information for any other locations (*id*. at Exh. 15). Respondent pointed out in its timely-filed response to the request that Byrd's charge was the only one to allege failure to hire. The EEOC had given Byrd a right-to-sue notice, and he had filed a class-action employment suit in federal district court. Because of that, contends respondent, the EEOC no longer had jurisdiction to investigate the charges.

        The San Francisco office of the EEOC re-opened its investigation of the Byrd and Wynne charges on August 2, 2006, pursuant to 29 C.F.R. 1601.28(a)(3) (*id*. at Exh. 10). On September 6, 2006, the EEOC served its first administrative subpoena on respondent (Thomas Decl. Exh. 3). Thereafter, respondent timely filed a petition to modify or revoke the administrative subpoena (*id*. at Exh. 4). The EEOC then served a Commissioner's charge on respondent on September 27, 2006, to which a second administrative suboena was attached (Baldonado Decl. Exhs. 12, 20). The Commissioner's charge alleged that respondent had "since at least 2003, discriminated against Blacks and Hispanics in hiring, termination,

3

promotion and terms and conditions of employment and against females in hiring. The employment positions involved are positions involving working in the public areas of the establishments, such as server, host and bartender, but excluding buspersons" (*id*. at Exh. 12). The second administrative subpoena asked for much of the same information as the first. It encompassed all of respondent's restaurant locations nationwide and all management and non-management positions. The eleven requests for information are summarized below (*id*. at Exh. 20):

1. Workforce data for all employees at all restaurant locations from August 1, 2004, to the present, including name, race/national origin, gender, date of hire, positions held, and reasons for discharge;

2. Data for applicants not hired to management and non-management positions in respondent's restaurants from August 1, 2004, to the present, including the applicants' race/national origin, the interviewer's race/national origin, and the race/national origin of the person making the decision not to hire the applicant, and the reason given for not hiring the applicant;

3. Data for all applicants hired to management and non-management positions in all restaurants from August 1, 2004 to the present, including the name, race and national origin of the person who decided to hire them, the reason for selection, and all positions held in the restaurant;

4. Employee rosters for all of respondent's restaurants from August 1, 2004 to the present;

5. Documents used at any time between August 1, 2004, and the present, including forms, policies, manuals, memoranda, used in the selection, training, recruitment, discharge, and job assignment of employees, also including personnel record-retention policies;

6. Data for all employees at all restaurants involved in recruitment, selection and hiring processes from January 1, 2002, to the present, including race/national origin, location, job description and date of discharge;

7. Information for any other individual involved in recruitment, hiring, or selection not named in the response to request number 6;

8. Information regarding the name, address, opening date, district, region, race/national origin of district managers, regional managers, and vice presidents of operations of all of respondent's restaurant locations nationwide;

9. Copies of respondent's EEO-1 reports from 2003, 2004, and 2005;

10. Complete copies of the personnel files for Juanita Wynne and Dante Byrd;

11. Any computerized or machine-readable files regarding personnel activities since January 1, 2002.

4

1	Respondent filed a second petition to revoke or modify the subpoena on October 4,
2	2006.  Applicant and respondent met several times thereafter to reach a compromise.  They did
3	not succeed.  On December 27, 2006, McCormick and Schmick's sent a letter to the EEOC
4	detailing its positions on compliance with the eleven individual document and information
5	requests in the subpoena (Baldonado Decl. Exh. 22).  In general, respondent was amenable to
6	producing information for its workforce for the positions of server, host and bartender, but not
7	other positions.  Respondent argued that data on back-of-the-house and management positions
8	was not relevant to the Commissioner's charge.  Respondent declined to agree to give
9	information on its applicant pools, stating that doing so would be unduly burdensome.

10	The EEOC filed this application for an order enforcing the administrative subpoena on
11	March 2, 2007.  Parties stipulated to continue the hearing date in an effort to reach an
12	agreement.  In its reply brief, the EEOC details a compromise that was under discussion with
13	respondent.  The Commission has previously investigated respondent and has received some
14	employment data from respondent pursuant to these investigations.  To avoid making
15	respondent produce the same documents again, the Commission agreed to coordinate with its
16	other offices to obtain those documents.  The EEOC also agreed to limit the scope of its
17	requests to management and non-management front-of-house positions and non-management
18	back-of-the-house positions.  The EEOC expressed willingness to accept a random sample of
19	one of every five employee records in respondent's possession.  As to request number six, the
20	EEOC is willing to limit its temporal scope to January 1, 2004, to the present.

21	A hearing was held on this application on May 10, 2007.  For the reasons stated below,
22	all objections were overruled except for the issue of undue burden.  At the end of the hearing,
23	parties were ordered to meet and confer to come up with a mutually agreeable way of producing
24	files and information requested by the EEOC.  In a letter to the Court signed by both parties,
25	respondent proposed that the EEOC identify 20 restaurant locations from which it would like to
26	receive personnel files.  Respondent would then collect and ship the originals of a random
27	sample of one of every five active and inactive personnel files to the EEOC's San Francisco
28	office for inspection and copying.  The EEOC would return the files after four weeks and would

5

1 handle the files so as to protect employees' private information.  The Commission agreed,
2 except it would accept files from no fewer than thirty of respondent's restaurant locations.

**ANALYSIS**

This is a summary proceeding in which the EEOC may enforce the administrative subpoena as long as it: (1) was within the agency's authority; (2) satisfied due process requirements; (3) seeks information relevant to the investigation; and (4) is not unduly burdensome. 29 U.S.C. 161(2); *EEOC v. Shell Oil Co.*, 466 U.S. 54, 71, n.26 (1984).  "If these factors are shown by the agency, the subpoena should be enforced unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome." *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983). Respondent does not argue that the Commission did not comply with due process requirements. Instead, it argues that enforcing this subpoena is outside the Commission's authority, that the information sought by the subpoena is irrelevant, and that compliance would be unduly burdensome.

**1.    JURISDICTION AND AGENCY AUTHORITY.**

Under Title VII of the Civil Rights Act of 1964, the EEOC has the authority to investigate charges of employment discrimination. 42 U.S.C. 2000e-5(b). In pursuing its investigations, the EEOC can obtain access to any records related to matters that are under investigation. 42 U.S.C. 2000e-8(a). Respondent argues that the EEOC's power under 29 C.F.R. 1601.28(a)(3) exceeds that scope of its authority under Title VII. The regulation stated:

> Issuance of a notice of right to sue shall terminate further proceeding of any charge that is not a Commissioner charge, unless the District Director; Field Director; Area Director; Local Director; Director of the Office of Field Programs or upon delegation, the Director of Field Management Programs; or the General Counsel; determines at that time or at a later time that it would effectuate the purpose of title VII or the ADA to further process the charge. Issuance of a notice of right to sue shall not terminate the processing of Commissioner charge.

Under this regulation, the EEOC is permitted to pursue Commissioner charges even after a right-to-sue letter has been issued.

Respondent contends that the Commission lacks authority to request information based on Byrd and Wynne's charges. Both of them filed complaints with the EEOC against respondent. They were then each issued right-to-sue letters. Both of them filed lawsuits against respondent in federal court. On August 2, 2006, the EEOC reopened Wynne and Byrd's charges by filing notices of intent to reconsider dismissal pursuant to 29 C.F.R. 1601.28(a)(3).

McCormick & Schmick's urges that the regulation at issue here exceeds the authority granted to the EEOC by Title VII of the Civil Rights Act of 1964. Because of this, respondent contends, the regulation should be struck down and the Commission's interpretation of it should be given no deference. In so arguing, respondent relies on *EEOC v. Hearst Corp.*, 103 F.3d 462 (5th Cir. 1997). In that decision, the Fifth Circuit emphasized that the EEOC's procedures for investigating charges are geared toward resolving administrative charges voluntarily. These procedures are no longer served after complainants file formal litigation. *Id*. at 469. The EEOC, however, retains the right to intervene in any such actions. Thus, according to the *Hearst* court, the EEOC's investigation procedures no longer serve any purpose after actions are filed in federal district court on the same charges.

The *Hearst* decision is not binding in our Circuit, and Judge Brazil of this district has previously disagreed with that decision. *See EEOC v. Anna's Linens Co.*, 2006 WL 1329548 (N.D. Cal. 2006). The Ninth Circuit has noted that achieving the aims of Title VII requires both investigations by the Commission and enforcement through private actions. *Rivera v. Nibco, Inc.*, 364 F.3d 1057, 1058 n.10 (9th Cir. 2004). Because of this, the Supreme Court has in the past been reluctant to adopt rules limiting the EEOC's ability to pursue a wide variety of discrimination claims. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 286 (2002). Finally, the *Hearst* decision itself recognized that the Commission may seek information that is the subject of an ongoing private civil action, provided that it does so on the basis of a different individual charge or a Commissioner's charge. 103 F.3d at 469. Here, a Commissioner's charge has been filed that incorporated Wynne and Byrd's charges against respondent. Accordingly, the Commission may receive Byrd and Wynne's personnel files as requested by paragraph ten of

7

the administrative subpoena. Continued investigation of Byrd's failure-to-hire claim is also proper under the Commissioner's charge.

### 2. RELEVANCE OF SUBPOENA REQUESTS.

Respondent next argues that the administrative subpoena seeks information not relevant to the Commissioner's charge. Under Title VII:

> In connection with any investigation of a charge filed under section 2000e-5 of this title, the Commission or its designated representative shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation.

42 U.S.C. 2000e-8(a). The EEOC's investigating authority is closely connected with charges filed with the agency, thus its investigative powers are somewhat narrower than those of other government agencies. Indeed, a valid charge is a jurisdictional prerequisite to the Commission's issuing a valid subpoena. Still, the EEOC's investigative powers have been construed broadly, and "courts have generously construed the term 'relevant' and have afforded the Commission access to virtually any material that might cast light on the allegations against the employer." *EEOC v. Shell Oil*, 466 U.S. at 64–65, 68–69. Furthermore, "[a]ny violations that the EEOC ascertains in the course of a reasonable investigation of the Charging Party's complaint are actionable." *General Telephone v. EEOC*, 446 U.S. 318, 331 (1980).

Respondent objects to the subpoena because it asks for irrelevant information that goes beyond the positions listed in the charge. Specifically, the subpoena asks for hiring data on *all* management and non-management positions in respondent's restaurants. Respondent argues that the Commissioner's charge, on which the subpoena is based, by its terms is limited only to the positions of server, host and bartender. The Commissioner's charge stated that "[t]he employment positions involved are positions involving working in the public areas of the employer's establishments, such as server, host, and bartender, but excluding buspersons" (Baldonado Decl. Exh. 12).

8

The Commissioner's charge makes clear that the EEOC is investigating respondent's hiring practices in front-of-the-house positions. The three specific positions in the charge are listed by way of example, not by way of limitation. Accordingly, limiting the subpoena to only those three positions is not warranted. The EEOC is entitled to receive employment data for all front-of-the-house positions other than busperson. The Commissioner did not choose to limit the investigation to those specific positions, so the subpoena will not be construed in that manner.

The subpoena asks for information about respondent's hiring practices for back-of-the-house, or non-public positions as well. The Commissioner's charge is intended to investigate respondent's overall hiring practices. Specifically, at the hearing, counsel stated that the EEOC wanted to investigate allegations that minority applicants were being funneled away from potentially more lucrative front-of-the-house positions, and toward non-public, back-of-the-house positions. To investigate such a charge, a good starting place would be to compare workforce data from both areas of the restaurant. Accordingly, workforce data for the entire restaurant is relevant to the charges here, and the subpoena will be enforced as to both front-of-the-house employees and back-of-the-house employees.

Respondent further argues that the subpoena should be restricted to only non-management or hourly employees. Again, respondent's contention is based on an overly cramped reading of the Commissioner's charge. It alleges discrimination for all front-of-the-house positions. Furthermore, de Carvalho, a former front-of-the-house manager, alleged that respondent retaliated against him for his opposition to racial discrimination taking place at respondent's restaurants. Thus, the production of such information is appropriate. The subpoena will not be limited to hourly positions, and respondent will be required to turn over employment data for front-of-the-house management positions.

9

### 3.     OVERBREADTH AND UNDUE BURDEN.

An administrative subpoena will not be enforced if it is overbroad or if compliance would place undue burdens on respondent. Compliance with a subpoena is excused if "compliance threatens to unduly disrupt or seriously hinder normal operations of a business." *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 479 (4th Cir. 1986). Alternatively, if the cost of gathering the information would be "unduly burdensome in the light of the company's normal operating costs," the subpoena should not be enforced. *Ibid*. Respondent has the burden of showing that compliance would cause an undue burden. *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983).

Respondent argues that compliance with the subpoena would seriously disrupt its normal business operations because compliance would require its managers to manually review and copy thousands of personnel files. The personnel files are located at each individual restaurant. McCormick & Schmick's corporate headquarters does not keep centralized personnel records (Brown Decl. ¶ 8). Employee turnover is high, around 100% per year. Respondent's director of human resources estimates that there are approximately 17,850 personnel files to be reviewed. She also estimates that each individual review will take approximately thirty minutes, representing a significant loss of man hours to respondent. Reviewing and copying personnel files would also tie up the multi-function printer/fax/copy machine located in the office of each location. The machine is used to print menus each day, to scan invoices and to fax documents to corporate offices (*id*. at ¶¶ 11–19). Finally, as to financial burden, respondent estimates that compliance would cost approximately 8925 man-hours of labor spread over all its locations. Respondent further explains that this would be a material loss of time and revenue because its net profits are small, $11 million for fiscal year 2005 and $13.3 million for fiscal year 2006 (Brown Decl. Exh. 1).

The Commission contends that respondent has failed to show that compliance would be unduly burdensome. In discussions with respondent, the EEOC presented a compromise under which respondent could turn over a random sample of one of every five personnel files.

10

1  Additionally, the Commission has agreed to coordinate with its other offices to obtain
2  documents already produced by respondent instead of having respondent repeat that process.
3  After the hearing petitioner and respondent discussed producing a sample of files from only the
4  Commission's restaurant locations of most interest.  Parties were not able to agree on a number:
5  petitioner proposed no fewer than thirty locations, respondent proposed twenty.  Given that
6  thirty locations represents fewer than half of respondent's locations, it seems reasonable to
7  require them to produce files from that amount.

8       Compliance with the subpoena in its original form would be a considerable burden on
9  respondents.  As with many restaurants, management positions are staffed leanly.  Taking large
10 amounts of managers' time away from normal duties would be a significant hardship to its
11 operations.  The compromise proposed by the EEOC would alleviate this burden considerably.
12 It greatly reduces the number of files respondent must produce, thus reducing costs.  It shifts the
13 cost and lost time associated with reviewing and copying the files to the EEOC because
14 respondent can ship the files to its office.  The EEOC's coordination with its other offices will
15 reduce respondent's burdens even further.  Respondent will still lose some time and money
16 complying with the administrative subpoena.  Given the scope and seriousness of these charges,
17 however, respondent cannot expect compliance to be painless.

18                          *                 *                 *

19
20      Respondent also argues that the temporal scope of the subpoena is too broad as to
21 requests in paragraphs six, eight and eleven.  Those items request information going back to
22 January 1, 2002; all other requests only go back to August 1, 2004.  In its proposed
23 compromise, the EEOC stated that it is willing to accept information back to August 1, 2004,
24 for paragraph 6, but maintains that it is otherwise entitled to the information requested by the
25 subpoena.  This is so because the allegations in the Commissioner's charge date back to at least
26 2003.  Paragraph eight asks for a list of restaurants, their locations and management structure
27 that were open since January 1, 2002.  Compliance with this request is not burdensome because
28 this information should be easily accessed by respondent.  Paragraph 11 asks for all electronic

11

or machine-readable files related to the above requests. This too, is an appropriate request. It does not require respondent to assemble any additional records, it only asks for files that already exist.

Respondent's argument about other EEOC investigations of McCormick & Schmick's is a red herring. That the EEOC has investigated respondent's hiring practices previously has little bearing on this current investigation. Now that the EEOC has agreed to coordinate with its other offices who have already received information, production of files will not be duplicative. The ultimate results of those investigations are not relevant either. Respondent also identifies its own allegations of wrongdoing against two of the people filing charges against it. The ultimate merits of the charges is not at issue here. These charges are still being investigated.

## CONCLUSION

For the above-stated reasons, applicant's request for an order enforcing the administrative subpoena is **GRANTED IN PART AND DENIED IN PART**. Pursuant to the compromise described in petitioner and respondent's joint letter to the Court, respondent is ordered to turn over the originals of a random sample of one of every five active and inactive personnel files requested by the administrative subpoena for a list of thirty restaurant locations to be determined by the Commission. The Commission should inform respondent of the thirty restaurant locations of interest no later than **MAY 22, 2007**. Respondent should turn over the files no later than **JUNE 12, 2007**. The Commission will be permitted to keep the files for a period of four weeks for the purposes of inspection and copying. The contents of files will be treated as confidential. This order is without prejudice to the Commission's later making further requests for information.

**IT IS SO ORDERED.**

Dated: May 15, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE